# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **BOBBY RECTOR, individually and on behalf of those similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION FILE NO.  1:14-cv-0764-LMM** |
| **VITAL DIAGNOSTICS, INC.,** | ) ) | |
| **Defendant.** | ) ) ) | |

## FINAL SETTLEMENT AGREEMENT AND RELEASE

Subject to the approval of the United States District Court for the Northern District of Georgia ("Court"), and pursuant to 29 U.S.C. §216(b) of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Parties, by and through their counsel, agree to the following Final Settlement Agreement and Release ("Final Settlement Agreement").

### RECITALS

A.      On March 14, 2014, the Named Plaintiff Bobby Rector filed an action entitled *Bobby Rector, et al. v. Vital Diagnostics, Inc.*, No. 1:14-CV-0764-LMM, in the United States District Court for the Northern District of Georgia (the "Action").

B.      In the Action, the Named Plaintiff alleged that Defendant Vital Diagnostics, Inc. violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay overtime for certain hours worked.  The Named Plaintiff sought damages, penalties, attorneys' fees, and costs, on his own behalf and on behalf of similarly situated individuals.

C.      On August 12, 2014, the Parties stipulated to conditional certification and to extend discovery.  (ECF No. 17.)  The Court granted conditional certification and extended

discovery the next day.  (ECF No. 18.)  Notice of the lawsuit was sent to the putative collective class on August 25, 2014.  This case consists of a total of ten plaintiffs, including Named Plaintiff Bobby Rector.

D.      Over the next several months, the Parties informally exchanged information, including payroll records and field service records.  Counsel for both Parties reviewed and analyzed the records for purposes of calculating Plaintiffs' potential damages.

E.      On December 2, 2014, the Parties agreed to attend mediation.  The Parties filed a joint motion to extend discovery to allow them to focus on the January 21, 2015 mediation. (ECF No. 34.)  The Court granted the Parties' joint motion to stay proceedings on December 22, 2014.  (ECF No. 35.)

F.      Defendant subsequently provided additional data relevant to Plaintiffs' alleged damages.

G.      On January 21, 2015, the Parties engaged in mediation with Michael Dickstein acting as the mediator.  Michael Dickstein is experienced in mediating wage and hour collective actions.  After extensive arm's length negotiations, the Parties reached an agreement to settle the claims asserted in the Action.

H.      Based upon the investigation of Plaintiffs' Counsel, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the action through trial, the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Plaintiffs' Counsel and the Settling Plaintiffs have concluded that a settlement with Defendant on the terms set forth in this Final Settlement Agreement is fair, reasonable, adequate, and in the best interests

of the Settling Plaintiffs.  The Settling Plaintiffs and Plaintiffs' Counsel have agreed to settle this Action with Defendant on the terms set forth in this Final Settlement Agreement.

I.      Defendant Vital Diagnostics, Inc. denies the claims asserted in the Action and makes no admission whatsoever of liability or violation of any statute.  Defendant nevertheless desires to settle the Action on the terms set forth in this Final Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Action shall be settled, released, and dismissed with prejudice, upon and subject to the fol1owing terms and conditions:

**1.      DEFINITIONS**

For purposes of this Final Settlement Agreement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Final Settlement Agreement:

A.      "Defendant" shall mean and refer to Vital Diagnostics, Inc.

B.      "Action" shall mean and refer to the action entitled *Bobby Rector, et al. v. Vital Diagnostics, Inc.*, No. 1:14-CV-0764-LMM, pending in the United States District Court for the Northern District of Georgia.

C.      "Court" means the United States District Court for the Northern District of Georgia.

D.      "Named Plaintiff" means Bobby Rector in his individual capacity.

E.      "Opt-in Plaintiffs" shall mean all individuals who filed consent forms with the Court requesting to participate in the Action.

F.      "Acceptance Deadline" means the date that is twenty-one calendar days after the day that notice of this settlement is sent to the Named and Opt-in Plaintiffs.

G.      "Settling Plaintiffs" shall mean all Named and Opt-in Plaintiffs within the scope of the settlement class (as identified on Exhibit A) who timely execute and return a "Release of Claims Form" by the Acceptance Deadline.

H.      "Rejecter" shall mean any Named and Opt-in Plaintiff who communicates a rejection by the Acceptance Deadline.

I.      "Non-Responder" shall mean any Named and Opt-in Plaintiff who does not timely return a Release of Claims Form by the Acceptance Deadline and does not meet the definition of a Rejecter.

J.      "Plaintiffs' Counsel" shall mean the law firm of Nichols Kaster, PLLP.

J.      "Defendant's Counsel" shall mean the law firm of Troutman Sanders LLP.

K.      "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the Final Settlement Agreement.

L.      "Released Claims" has the meaning set forth in Section 4, *infra*.

M.      "Released Parties" means Vital Diagnostics, Inc. (including its past, present, and future officers, directors, employees, agents, insurers, and attorneys) and other affiliated persons and entities, including but not limited to, Third Security Staff 2001 LLC, New River Management IV, LP, and Tee Two Nominees Pty Ltd.

2.      **SETTLEMENT AMOUNT**

A.      In consideration for the actions, promises and mutual covenants and releases described herein, the total sum of $475,000.00 (the "Settlement Amount") shall be paid by Defendant to resolve all Settling Plaintiffs' Released Claims as described in Section 4, *infra*. The Settlement Amount includes all amounts to be paid by Defendant, including amounts for payments to the Settling Plaintiffs, attorneys' fees, litigation costs, and expenses of Plaintiffs' Counsel, costs incurred in administering this settlement, and service fees to the Named Plaintiff. Under no circumstances shall Defendant be obligated to pay an amount in excess of $475,000.00.

B.      Under no circumstances, other than amounts allocated to a Rejecter under Section 8(B) or a voiding of this agreement under Sections 8(D) or Section 11, *infra*, shall any part of the $475,000.00 Settlement Amount revert to Defendant.  In the event of a Rejecter under Section 8(B), *infra*, it is the Parties' intention that the Rejecter's allocation of the Settlement Amount shall be retained by Defendant, and that the Rejecter shall be restored with all rights that he/she possessed prior to the execution of this Final Settlement Agreement.  In the event that this Final Settlement Agreement is voided under Sections 8(D) or Section 11, *infra*, it is the Parties' intention that the full Settlement Amount shall revert to Defendant, and that the Settling Plaintiffs shall be restored with all rights that they possessed prior to the execution of this Final Settlement Agreement.

3.      **NO ADMISSION OF LIABILITY; INADMISSIBILITY OF THIS AGREEMENT; PARTIES' AUTHORITY**

A.      Nothing contained in this Final Settlement Agreement shall be construed as or deemed an admission of liability, damages, culpability, negligence, wrongdoing, or other

unlawful behavior on the part of Defendant.  Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and the allegations contained in the Complaint.

B.      This Final Settlement Agreement is a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties, the Released Parties, or by any third-party.  The Parties further acknowledge and agree that neither this Final Settlement Agreement nor the settlement shall be used to suggest an admission of liability in any dispute the Parties or any third-parties may have now or in the future with respect to any person or entity, including Defendant and/or Released Parties.  Neither this Final Settlement Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Final Settlement Agreement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

## 4.    **RELEASE**

Each and every Settling Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, hereby knowingly and voluntarily releases all known and unknown claims against the Released Parties based on putative violations of federal or state law pertaining to hours of work, payment of wages, or overtime compensation and all claims that were asserted or could have been asserted in the Action that occurred or are alleged to have occurred from the beginning of time through January 21, 2015, including but not limited to, overtime wages, liquidated damages, penalties and interest under the Fair Labor Standards Act and analogous state wage and hour laws (the "Released Claims").

5.     **DISTRIBUTION OF SETTLEMENT AMOUNT**

A.     Of the $475,000.00 Settlement Amount, $158,333.33 will be allocated as attorneys' fees, $12,610.00 as reimbursement of litigation costs and expenses, and $1,000.00 as a settlement administration fund.  To the extent the FLSA requires Court approval of the amount of attorneys' fees and litigation costs and expenses in an FLSA settlement, these attorneys' fees and litigation costs and expenses will be subject to Court approval.

B.     Defendant will not oppose Plaintiffs' Counsel's application to the Court for approval of attorneys' fees and litigation costs in the amount set forth in Section 5(A) above.

C.     Plaintiffs' Counsel may apply to the Court to allocate a reasonable service payment of $5,000.00 from the Settlement Amount for the time and effort that Named Plaintiff Bobby Rector incurred in securing the Settlement in this Action (in addition to compensating him for his portion of the overall settlement proceeds).  Defendant will not oppose this service payment request.

D.     Within twenty-one (21) calendar days of the Settlement Effective Date, Defendant shall pay the attorneys' fees and litigation costs and expenses approved by the Court to Plaintiffs' Counsel via wire transfer or by check.  Defendant will issue Nichols Kaster, PLLP an IRS Form 1099 for the attorneys' fees and litigation costs and expenses approved by the Court.

E.     If the Court does not approve any portion of the attorneys' fees and litigation costs or service payments outlined in this Section 5, such funds that are not approved shall not revert to Defendant under any circumstances other than a voiding of this agreement under Sections 8(D) or Section 11, *infra*.  Rather, the difference between the requested attorneys' fees and litigation costs or service payments and what is actually awarded by the Court will be reallocated to the Settling Plaintiffs on a pro rata basis.

F.      Except as otherwise provided in Sections 5(A–E) of this Final Settlement Agreement, the Parties shall bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action.  The Settling Plaintiffs, Plaintiffs' Counsel, Defendant, and Defendant's Counsel shall not seek an award of attorneys' fees, costs, or expenses in the Action except as set forth in Sections 5(A–E) above.

## 6.      CALCULATION OF SETTLEMENT OFFERS TO PLAINTIFFS

After the payment for attorneys' fees, the payment for litigation costs and expenses, and the service payment to the Named Plaintiff as outlined in Section 5, the amount allocated from the Settlement Amount to Plaintiffs in the scope of the settlement class is $298,056.67 (the "Allocation Fund").  Defendant's individual settlement offers to the Named and Opt-in Plaintiffs within the scope of the settlement class are outlined in Exhibit A.  The individual settlement offers outlined in this Section 6 and Exhibit A are based on the allocation formula developed by Plaintiffs' Counsel.

## 7.      PAYMENT TO PLAINTIFFS; TAXATION AND NO TAX ADVICE

A.      Each Settling Plaintiff will receive two separate checks from Defendant, each of which will be for 50% of the settlement amount allocated to that Settling Plaintiff in Exhibit A. The first check will be allocated as overtime wages, and payroll taxes will be withheld from this payment, which will be reported on a W-2 form.  The second check will be allocated as liquidated damages under the FLSA, and payroll taxes will not be withheld from this payment, which will be reported on an IRS 1099 form.

B.      Each Settling Plaintiff shall be obligated to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Final

Settlement Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Final Settlement Agreement, without any contribution whatsoever from any of the Released Parties or Plaintiffs' Counsel.   Nothing in this Final Settlement Agreement shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Settling Plaintiff's participation in any portion of this Final Settlement Agreement.

**8.** **COMMUNICATING SETTLEMENT OFFERS; REJECTERS AND NON-RESPONDERS**

A.   Plaintiffs' Counsel shall be responsible for distributing the notice of this settlement to the Named and Opt-in Plaintiffs within the scope of the settlement class.  Plaintiffs' Counsel will send the notice of settlement to all Plaintiffs within three days of execution of this Settlement Agreement.   To be eligible to receive his/her individual settlement offer, each Plaintiff within the scope of the settlement class must sign and return a Release Form, attached hereto as Exhibit B, no later than the Acceptance Deadline specified in the notice.

B.   Each Opt-in Plaintiff within the scope of the settlement class shall have the opportunity to accept or reject his/her individual settlement offer.   Such rejection must be communicated in writing to Plaintiffs' Counsel no later than Acceptance Deadline specified in the notice.   An Opt-in Plaintiff within the scope of the settlement class who communicates a rejection is referred to herein as a "Rejecter."   A Rejecter shall be dismissed without prejudice and he/she shall have thirty (30) days from the Settlement Effective Date within which to file a subsequent claim should he/she choose to do so.   Failure to re-file his/her claim within this timeline will result in his/her forfeiture of consent-based tolling.   Rejecters will not be bound by

the Release outlined in Section 4, *supra*.  Plaintiffs' Counsel will advise Defendant's counsel within one business day in the event any such rejections are received.  The individual settlement amount(s) allocated to Rejecters will be retained by Defendant.  The Final Settlement Agreement shall remain binding in the event of Rejecters unless Defendant voids this agreement under Sections 8(D) or Section 11, *infra*.

C.      Plaintiffs' Counsel shall inform Defendant's Counsel by 5:00 p.m. Central Time the business day after the Acceptance Deadline whether there are any Non-Responders.  Non-Responders will be dismissed from the Action without prejudice.  The individual settlement amount(s) allocated to Non-Responder(s) will be reallocated pro-rata to each Settling Plaintiff.

D.      Defendant retains the right to void the Final Settlement Agreement if more than one (1) of the Named and Opt-in Plaintiffs within the scope of the settlement class is a Rejecter or Non-Responder.  Defendant shall communicate its desire to exercise this option in writing via email to Rachhana T. Srey at srey@nka.com.  If Defendant desires to exercise this option, it must do so by 5:00 p.m. CST, on the third business day after the Acceptance Deadline.

E.      Provided that the Court approves the settlement, the claims of any Settling Plaintiffs asserted in the Lawsuit will be dismissed with prejudice and the Settling Plaintiffs will be bound by the release outlined in Section 4, *supra*.

9.      **SETTLEMENT PAYMENT AND DISTRIBUTION OF CHECKS**

A.      Within twenty-one (21) calendar days after the Settlement Effective Date, Defendant shall provide to Plaintiffs' Counsel the settlement checks for each Settling Plaintiff. Checks to Settling Plaintiffs shall indicate on their face that they will be void after ninety (90) days.  Accordingly, Settling Plaintiffs shall have ninety (90) days to cash, deposit, or otherwise negotiate each of their settlement checks.

B.      Settlement checks that have not been cashed, deposited, or otherwise negotiated with 90 days shall be null and void.  Defendant shall provide Plaintiffs' Counsel with a list of the Settling Plaintiffs who have not cashed their checks within fifteen (15) days prior to the expiration of this 90-day period.  Any funds from such settlement checks shall be donated to a 501(c)(3) charitable organization chosen by Plaintiffs' Counsel.

## 10.      REASONABLE COMPROMISE OF BONA FIDE DISPUTE

The Parties agree that the terms of this Final Settlement Agreement represent a reasonable compromise of disputed issues, arising from a bona fide dispute over FLSA coverage and the merits of Plaintiffs' claims and agree to represent the same to the Court.  The Parties further agree that the settlement is a fair, reasonable, and adequate resolution of Plaintiffs' claims and is in the best interests of the Plaintiffs.

## 11.      VOIDING THE AGREEMENT

A.      If this Final Settlement Agreement is terminated as provided in Sections 8(D), *supra*, then this Final Settlement Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence and of no probative value, and the Parties hereto represent, warrant, and covenant that it will not be used or referred to for any purpose whatsoever.

B.      Counsel for any party to this Final Settlement Agreement shall have the right to terminate this Final Settlement Agreement by providing written notice of their election to do so to counsel for the other party hereto within fifteen (15) calendar days after any of the following occurs: (i) the Court refuses to approve the Final Settlement Agreement or any material part of it; or (ii) the Court declines in any material respect to enter an Order Granting Approval to Final Settlement Agreement and Dismissal of Claims in the form provided in the Final Settlement.  If, in approving this Agreement, the Court reduces the amount of payment that will be made to

Plaintiffs' Counsel for attorneys' fees or costs, such reduction shall not be considered a material change to this Agreement, this Agreement shall remain enforceable, and such funds that are not approved will be reallocated on a pro rata basis to the Settling Plaintiffs.

C.      In the event that Counsel for any party exercises the right of termination set forth in Section 11(B), *supra*, then this Final Settlement Agreement shall be deemed null and void, of no force and effect, inadmissible as evidence and of no probative value, and the Parties hereto represent, warrant, and covenant that neither the Agreement nor any discussions, conversations, or negotiations leading to execution of the Agreement, will be used or referred to for any purpose whatsoever.

## 12.   DISMISSAL OF ACTION

If the Court approves this Final Settlement Agreement, the Parties shall request the Court to enter a Final Approval Order and Judgment that specifically includes provisions that:

a.      Dismiss with prejudice all claims by Settling Plaintiffs against Defendant in this Action;

b.      Dismiss without prejudice all claims by Rejecters or Non-Responders against Defendant in this Action; and

c.      Reserve continuing jurisdiction over the construction, interpretation, implementation, and enforcement of this Final Settlement Agreement and over the administration and distribution of the benefits provided by this Final Settlement Agreement.

## 13.   CONFIDENTIALITY PROVISIONS

Settling Plaintiffs, individually, will agree to not disclose any of the terms of this settlement, including any discussions, conversations, or negotiations leading to the execution of

the settlement agreement, to any other person or entity, other than in documents filed in connection with the joint motion for approval of the settlement and their attorneys, spouse, accounts or tax advisors, or as otherwise required by law or process.  In response to any inquiry made with respect to this settlement, Settling Plaintiffs agree to state only that the matter has been resolved or something to this effect.

**14.    NO PRESS RELEASES OR PUBLIC STATEMENTS**

Plaintiffs' Counsel agrees to not issue a press release or make public statements regarding the settlement.

**15.    MUTUAL FULL COOPERATION**

Counsel for the Parties agree to and shall use their best efforts to fully cooperate with each other in good faith and to take all actions reasonably necessary to implement the terms of this Final Settlement Agreement.

**16.    CONSTRUCTION**

The Parties agree that the terms and conditions of this Final Settlement Agreement are the result of lengthy and intensive arms-length negotiations between the Parties and that this Final Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Final Settlement Agreement.  The Parties request that before declaring any provision of this Final Settlement Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents and the intent expressed in this Final Settlement Agreement.

**17.    MEDIATION OF DISPUTES**

Any dispute that may arise under this Final Settlement Agreement, including any dispute with respect to administration of the settlement benefits to Settling Plaintiffs, shall be submitted by mutual agreement of the Parties to Michael Dickstein for mediation.

**18.    CAPTIONS AND INTERPRETATIONS**

Section titles or captions contained in this Final Settlement Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Final Settlement Agreement or any of its provisions.

**19.    MODIFICATION**

This Final Settlement Agreement, including the attached Exhibits A–B, may not be changed, altered, or modified, except in a writing signed by counsel for the Parties.  This Final Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties and approved by the Court.

**20.    INTEGRATION CLAUSE**

This Final Settlement Agreement and the attached Exhibits A–B, which are incorporated fully herein, contain the entire agreement between the Parties relating to the settlement of the Action, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged in this Final Settlement Agreement.  No rights under this Final Settlement Agreement may be waived except in a writing signed by the counsel for the Parties as set forth in Section 11 or 19, *supra*.

**21.    BINDING ON ASSIGNS**

This Final Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

22.    **<u>COUNTERPARTS & SIGNATURES</u>**

      This Final Settlement Agreement may be executed in counterparts, and when counsel have signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Final Settlement Agreement.   This Final Settlement Agreement may be executed by facsimile signatures, PDF, or email, which shall be deemed to be originals.

23.    **<u>APPLICABLE LAW</u>**

      This Final Settlement Agreement shall be governed by and construed in accordance with federal law and the law of the State of Georgia, to the extent federal law does not apply.

24.    **<u>RETENTION OF JURISDICTION</u>**

      The Parties intend to request that the Court retain jurisdiction with respect to the implementation and enforcement of the terms of the Final Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Final Settlement Agreement.

*[THIS SPACE IS INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]*

**IT IS SO STIPULATED.**

Dated: 3|10| 2015          NICHOLS KASTER, PLLP

By:

Rachhana T. Srey
Attorney for Plaintiffs

Dated: 3/10/2015          TROUTMAN SANDERS LLP

By:

Michael Kaufman
Attorney for Defendant Vital Diagnostics, Inc.

Dated: 3/11/2015     By:

Vital Diagnostics, Inc.
Name: Clance Wallenful
Title: Vice President

# EXHIBIT A

| Name | Allocation Amount |
| --- | --- |
| Bobby Rector | $15,041.98 |
| Bisrat Desta | $5,855.99 |
| Gabriel David | $42,077.97 |
| Steve Dwyer | $37,277.24 |
| Richard Kimball | $43,939.96 |
| Raouf Gayed | $47,939.65 |
| Peter Capilli | $37,781.08 |
| Richard Christian | $23,877.54 |
| Mark Gregory | $39,891.17 |
| Erich Montel | $10,374.09 |

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BOBBY RECTOR, individually and on behalf of those similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **CIVIL ACTION FILE NO.  1:14-cv-0764-LMM** |
| **VITAL DIAGNOSTICS, INC.,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

**YOUR SETTLEMENT OFFER: $XXX**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU WERE EMPLOYED BY VITAL DIAGNOSTICS, INC. AND TIMELY JOINED THIS CASE AS AN "OPT-IN" PLAINTIFF.  YOUR DECISION TO PARTICIPATE IN THIS SETTLEMENT MAY HAVE LEGAL CONSEQUENCES SO PLEASE REVIEW THIS NOTICE CAREFULLY. TO OBTAIN YOUR SHARE OF THE SETTLEMENT, YOU MUST RETURN THE RELEASE OF CLAIMS FORM TO PLAINTIFFS' COUNSEL SO THAT IT IS RECEIVED BY:**

**FRIDAY, APRIL 3, 2015 AT 5:00 PM CENTRAL TIME**

## I.    DESCRIPTION OF THE LAWSUIT

On March 14, 2014, Named Plaintiff Bobby Rector commenced a lawsuit against Vital Diagnostics, Inc. ("Vital" or "Defendant") on behalf of himself and other "similarly situated" individuals.  Plaintiff Rector worked as a field service engineer for Vital. He brought claims on his own behalf and on behalf of other field service engineers, lab applicable specialists, and instrument specialists (collectively, "FSE") for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  He alleged that Vital improperly failed to pay him and other FSEs for all of their overtime hours worked.

Defendant denies any liability or wrongdoing of any kind associated with the claims in this lawsuit and specifically denies that the FSEs are owed any overtime under the FLSA. Plaintiffs' Counsel and Vital have reached an agreement to settle this lawsuit, a copy of which is available to you upon request.  The agreement is subject to court approval and satisfaction of

certain conditions identified in the Final Settlement Agreement and Release filed with the Court. If you would like to review a copy of the Final Settlement Agreement and Release, please contact Plaintiffs' Counsel as directed in Section VI below.

## II.   **SETTLEMENT**

On January 21, 2015, the Parties participated in a mediation session with a highly qualified mediator experienced in FLSA litigation.  In anticipation of mediation, Vital voluntary disclosed various documents and data for all Plaintiffs, including payroll information, field service report data, and old time records for various Plaintiffs.  The Parties engaged in arms-length, comprehensive negotiations to settle this lawsuit through mediation and reached agreement on the terms and conditions of a settlement.  Plaintiffs' Counsel has obtained from Vital what they believe to be a fair and reasonable settlement offer in light of disputed liability and damages issues.

In consideration of the entry of a final judgment and the dismissal of this Action with prejudice and release of claims referenced herein, Defendant has agreed to pay up to a maximum gross amount of $475,000.00 to resolve this Action in its entirety.

### A.      **Your Settlement Amount, Checks, and Taxation**

Your individual settlement offer is based on a formula that took into consideration a number of factors, including the date your "opt-in" consent form was filed with the Court, your length of employment as a FSE within the three-year statute of limitations period, your income earned, and an estimate of overtime hours worked.  Considering these factors and the data Defendant provided, Plaintiffs' Counsel determined each Plaintiff's individual settlement offer by calculating each Plaintiff's estimated overtime compensation due, and then allocated to him his pro rata share of the total settlement reached, after the amount of attorneys' fees, litigation costs, contingency fund set aside to effectuate the purposes of this settlement, and service payment to the Named Plaintiff for his efforts in litigating this case and assistance in securing the settlement in this lawsuit, were deducted.

If you accept your settlement offer and return the enclosed Consent to Join Settlement and Release of Claims Form so that it is received by Plaintiffs' Counsel **FRIDAY, APRIL 3, 2015, AT 5:00 PM CENTRAL TIME**, and if the Court approves the settlement and all other conditions of the Final Settlement Agreement and Release are satisfied, then you will receive two settlement checks.  A portion of your settlement payment will be reported as wages for tax purposes and you will receive an IRS Form W-2 for this portion of the payment. Tax withholdings for wage payments will be deducted from this first check amount.  The second check represents the other portion of your settlement payment and will constitute payment for alleged liquidated damages, interest, and penalties, and will be reported on an IRS Form 1099. You shall be solely responsible for the payment of any local, state, or federal taxes resulting from or attributable to the payments received under this settlement.  You should consult a tax preparer if you have any tax-related questions.

You will have ninety (90) days to cash your settlement checks.  After that date any uncashed checks will be voided and those funds will be donated to charity.

### B.      Attorneys' Fees and Costs

As Plaintiffs' Counsel's fee agreement with Plaintiffs provides for attorneys' fees in the amount of one-third (33.33%) of the total settlement, Plaintiffs' Counsel has deducted 33.33% for attorneys' fees in addition to the litigation costs they have paid to litigate the case.  Such fees and costs payments will be subject to court approval.  **Please note, these amounts have already been deducted from your settlement share and the settlement offer amount listed above will not be subject to any further deductions for attorneys' fees or costs.**

### C.      How to Accept or Reject Your Settlement

To accept your settlement offer, your Release of Claims Form must be received by Plaintiffs' Counsel by **FRIDAY, APRIL 3, 2015, AT 5:00 PM CENTRAL TIME.**  For your convenience, a postage-paid envelope is provided with this Notice.  You may also fax it to 612-215-6870 or email it to srey@nka.com rather than mailing it.

If you choose to reject your settlement offer, you must provide written notice of your rejection to Plaintiffs' Counsel and it must be received by **FRIDAY, APRIL 3, 2015, AT 5:00 PM CENTRAL TIME.**  If you timely reject your settlement offer, your claims will be dismissed by the Court without prejudice and you will have thirty (30) days to re-file your claim. If you do not re-file your claim within this 30-day period, you will forever forfeit consent-based tolling.

If you do not return your Release of Claims Form or provide written notice of rejection to Plaintiffs' Counsel by Friday, April 3, 2015, at 5:00 PM Central Time, your claims will be dismissed without prejudice.

## III.    SCOPE OF RELEASE FOR PARTICIPATING PLAINTIFFS

Please read the full release contained in the attached Release of Claims Form carefully. As described below, if you accept your settlement offer, you are agreeing to release certain wage and hour claims against Defendant.

## IV.    SETTLEMENT CONFIDENTIALITY FOR PARTICIPATING PLAINTIFFS

Please read the full release contained in the attached Release of Claims Form carefully. As described below, if you accept your settlement offer, you are agreeing to not disclose any terms of the settlement to anyone other than your attorneys, spouse, accountants or tax advisors, or as otherwise required by law or process.

## V.     NO RETALIATION OR ADVERSE ACTION

Vital will not take any adverse action against any individual because he or she participates or declines to participate in the settlement.

3

## VI.    APPROVAL OF THE SETTLEMENT

The settlement is subject to court approval and satisfaction of all conditions set forth in the Final Settlement Agreement filed with the Court.  Plaintiffs' Counsel and Defendant will jointly file a motion with the Court on or before Monday, April 13, 2015, requesting approval of the settlement.  The Court will likely hold a settlement approval hearing at a date and time to be determined.  This hearing is being conducted to determine whether the Court should approve the settlement.  The Court will consider whether the settlement is fair, reasonable, and adequate. ***You are not required or expected to attend the hearing, but have the opportunity to do so if you choose.***  This opportunity to attend the hearing applies to those Plaintiffs who accept their settlement offer and also to those who reject the settlement offer.

If the Court approves the settlement and if all conditions set forth in the Final Settlement Agreement and Release are satisfied, Vital will deliver all settlement checks to Plaintiffs' Counsel for immediate distribution to Plaintiffs within twenty-one (21) days of the Court's approval of the settlement.

## VII.    QUESTIONS ABOUT THE SETTLEMENT

Questions about the settlement should be directed to Plaintiffs' Counsel:

Nichols Kaster, PLLP
Rachhana T. Srey
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Toll Free Telephone: (877) 448-0492
Fax: (612) 215-6870
Email: srey@nka.com
Website: www.nka.com

4

## RELEASE OF CLAIMS FORM

***Bobby Rector v. Vital Diagnostics, Inc., Court File No. 14-cv-0764-AT***
***(the "Civil Action")***

I received the Notice of Settlement and Release of Claims Form ("Release Form"), which informed me that I will receive a payment of $[AMOUNT] if I return this Release Form so that it is received by Plaintiffs' Counsel by **FRIDAY, APRIL 3, 2015, 2015, AT 5:00 P.M. CENTRAL TIME.**  By signing and returning this Release Form, I acknowledge my acceptance of the settlement and understand that I am bound by the terms of the parties' Settlement Agreement if the Court approves the settlement.

By signing and returning this Release Form, I agree that in exchange for my total settlement payment, and on behalf of my respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, I hereby knowingly and voluntarily release all known and unknown claims against Vital Diagnostics, Inc. (including its past, present, and future officers, directors, employees, agents, insurers, and attorneys) and other affiliated persons and entities, including but not limited to, Third Security Staff 2001 LLC; New River Management IV, LP; and Tee Two Nominees Pty Ltd., based on putative violations of federal or state law pertaining to hours of work, payment of wages, or overtime compensation and all claims that were asserted or could have been asserted in the Action that occurred or are alleged to have occurred from the beginning of time through January 21, 2015, including but not limited to, overtime wages, liquidated damages, penalties and interest under the Fair Labor Standards Act and analogous state wage and hour laws.

I agree that I will not disclose any of the terms of this settlement, including any discussions, conversations, negotiations leading to the execution of the settlement agreement, to any other person or entity, other than in documents filed in connection with the joint motion for approval of the settlement and my attorneys, spouse, accounts or tax advisors, or as otherwise required by law or process.  In response to any inquiry made with respect to this settlement, I agree to state only that the matter has been resolved, or something to this effect.

I acknowledge that I have carefully read the Release Form and fully understand its meaning, intent and terms, have had the opportunity to consult with counsel, and have voluntarily entered into it.

DATE: _____          Signature: _____
                                                          [PRINTED NAME]

**Mail, Fax, or Email to Plaintiffs' Counsel:**
Nichols Kaster, PLLP, c/o Rachhana T. Srey, 4600 IDS Center, 80 S. 8th St, Minneapolis, MN 55402
Fax: (612) 215-6870 Toll Free Telephone: (877) 448-0492, email: srey@nka.com

[NAME]